UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | | |
|---|---|---|
| KENNETH SHEARER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 20-66-GFVT-CJS |
| | ) | |
| v. | ) | |
| | ) | |
| JILL MILLER, *et al.,* | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendants' Motion for Summary Judgment (R. 41). The presiding District Judge has entered a referral order assigning to the undersigned pretrial authority according to 28 U.S.C. § 636(b). (R. 27). This authority includes discovery and pretrial management, including preparing proposed findings of fact and conclusions of law on any dispositive motions. (*Id.*). Before the Court is Defendants' Motion for Summary Judgment (R. 41), Plaintiff's Response (R. 50), and Defendants' Reply (R. 55). Having all relevant documents before the Court, the matter is now ripe for consideration and preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b). (*See* R. 27). For the following reasons, it will be recommended that Defendants' Motion for Summary Judgment (R. 41) be **granted**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Kenneth Shearer is an inmate at the Eastern Kentucky Correctional Complex ("EKCC"). (R. 1). On June 12, 2020, Shearer filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 against Defendants Jill Miller ("Defendant Miller") and Dr. Frederick Kemen ("Defendant Kemen") in their official and individual capacities. (R. 1). The Court conducted an initial screening of Shearer's Complaint on August 14, 2020, and permitted Shearer's Eighth

Amendment claims of deliberate indifference to his serious medical needs to proceed against Defendant Miller and Defendant Kemen in their individual capacities only. (R. 12). At the time of the alleged events, both Defendants were employees of WellPath, LLC, a contractor providing medical care and services to inmates at EKCC. (R. 25). Defendant Miller served as EKCC's Health Services Administrator and Defendant Kemen was a contracted doctor. (*Id.*).

The substance of Shearer's claims against Defendants relate to his care and treatment at EKCC for diabetes-related complications with his feet and toes. While Shearer has received ongoing treatment for these issues following his Type-2 Diabetes diagnosis in 2015 (R. 43 at Page ID 860), the claims he presented in his Complaint are for the time period of February 26, 2018 through August 2, 2019. (R. 1 at Page ID 2). Shearer's allegations have two components: 1) Defendant Miller acted with deliberate indifference to Shearer's serious medical needs by failing to provide Shearer with appropriate recommended footwear for his condition; and 2) Defendant Kemen acted with deliberate indifference to Shearer's medical needs by declining to send him to the emergency room on August 2, 2019. (*Id.* at Page ID 3).

### A. Plaintiff's Recommended Footwear

On February 26, 2018, Shearer sought medical treatment at EKCC for an infection in his right fifth toe. (R. 1 at Page ID 10). A few weeks later, he followed up with his outside provider and regular podiatrist Dr. Clayton, who recommended that Shearer "wear a breathable shoe due to chronic hyperhidrosis (excessive foot sweating as a side effect of his diabetes)" and follow up in three weeks. (*Id.* at Page ID 12-13). Shearer continued to follow up with Dr. Clayton and was seen May 2018; Dr. Clayton noted on his intake form that Shearer was "asking for gauze to place between his toes" because he was not receiving treatment for his feet at EKCC. (*Id.* at Page ID 13). On May 11, 2018, Shearer received permission to wear his shower shoes at all times

throughout EKCC.  (*Id.* at Page ID 15).  Shearer was unhappy with this solution, stating that his job duties as a dorm janitor could not be performed safely without proper footwear and that shower shoes hindered his participation in recreational activities.  (R. 1 at Page ID 48).  On May 23, 2018, Shearer filed an inmate grievance form stating that he had still not received the correct footwear and asking to be provided "breathable or vented shoes" to manage his hyperhidrosis.  (R 1 at Page ID 16).  At a follow up appointment with Dr. Clayton on June 15, 2018, Dr. Clayton noted that Shearer had still not received the requested footwear.  (*Id.* at Page ID 18).  According to health records provided by the Defendants, Shearer had refused regular insulin treatments and diabetic care from October 2018 through the end of March 2019.  (R. 43 at Page ID 881-87).  On July 17, 2019, Shearer visited St. Claire Regional Medical Center with ulcerations on his feet, where personnel renewed a request for breathable shoes for Shearer.  (*Id.* at Page ID 23).

### B.    August 2, 2019 Evaluation

On August 2, 2019, Shearer visited the medical department at EKCC complaining of severe pain and swelling in his feet and toes.  (R. 1 at Page ID 3).  Nurse Practitioner Mary Nolan ("NP Nolan") noted the infection in his toes and called Defendant Kemen to consult on sending Shearer to the emergency room.  (R. 1 at Page ID 31).  NP Nolan was instructed to take a culture of the wound and move up Shearer's existing podiatry appointment set for the following month.  (*Id.*).  Shearer's appointment was rescheduled for August 7, 2019, at which Shearer was given the option of surgery to remove his right second toe and his left fourth toe or to pursue more conservative treatments.  (R. 1 at Page ID 33-34, 36).  Shearer consented to surgery, and Shearer's toes were removed on August 9, 2019.  (R. 1 at Page ID 37).

### C.    Prisoner Grievance Procedures

#### 1.    Grievance No. 18-257 re: Recommended Footwear

Shearer filed Grievance Number 18-257 on May 23, 2018 to address his complaints with not receiving the podiatrist-recommended footwear from EKCC. (R. 1 at Page ID 42). On June 21, 2018, Shearer noted that he was satisfied with an informal resolution from EKCC officials that assured him he would be provided the footwear. (R. 1 at Page ID 4; 42). No further action was taken regarding this grievance.

### 2. Grievance No. 19-534 re: Appointment with Dr. Kemen and Continued Footwear Issues

On August 20, 2019, Shearer filed Grievance Number 19-534 alleging inadequate treatment after not being admitted to the emergency room on August 2, 2019. (*Id.* at Page ID 47). Shearer specifically identified Defendant Miller by stating "[t]he change implemented by Jill Miller . . . [has] caused me to lose toes and be denied medical treatment and permanent damages." (*Id.* at Page ID 44). Shearer did not describe what this change was or detail Defendant Miller's connection with the events of August 2, 2019. (*Id.*). This grievance form was rejected for providing too little information and Shearer was instructed to make corrections and resubmit the grievance form. (*Id.* at Page ID 45). In his resubmission, he did not mention Defendant Miller, but did complain about his treatment on August 2. (*Id.* at Page ID 52). Shearer alleged that he tried to get medical to treat his foot, was told by NP Nolan that he needed to go to the emergency room, and then forced to wait for an upcoming appointment instead. (*Id.*). On September 17, 2019, an informal resolution was provided to Shearer stating that provider orders were followed, Shearer was being fitted for proper shoes, and staff had a conversation with Shearer about non-compliance with diabetes medications and diet. (*Id.*). Shearer noted that he was not satisfied with this resolution; he submitted additional information at that time including a notation regarding the doctor NP Nolan spoke with. (*Id.*) ("whoever [NP Nolan] talked with upstairs denied me emergency or E.R."). The Health Care Grievance Committee reviewed the complaint on

September 27, 2019, and concurred with the informal resolution. (R. 1 at Page ID 59). Notations on the form state that Shearer was "counseled multiple times about the importance of being compliant with [his] treatments and had been told that [he] may lose [his] toes." (*Id.*). Additional notes indicated that Shearer was "seen and treated by the outside provider according to their recommendation." (*Id.*).

On October 4, 2019, Shearer appealed the Health Care Grievance Committee decision to the Health Care Administrative Review, stating that he had never been advised that he may lose his toes. (R. 1 at Page ID 60). In the appeal, Shearer alleged that if he had been sent to the emergency room at NP Nolan's suggestion, he "might still have all of [his] toes." (*Id.*). At this stage, Shearer identified Defendant Kemen by name in his explanation for why he was appealing the grievance. (*Id.*). The Health Care Administrative Review denied the complaint on October 14, 2019. (R. 1 at Page ID 4-5).

In June 2020, Shearer filed his Complaint with the Court. (R. 1). After initial screening, a case schedule was issued and the case progressed through discovery. On May 25, 2022, the Defendants filed the instant Motion for Summary Judgment. (R. 41). Shearer responded on July 5, 2022 (R. 47), but was ordered to amend his response by July 22, 2022 to conform with the page limit requirements in Local Rule 7.1(d). (R. 49). On July 27, 2022, Shearer filed his Response to the Motion for Summary Judgment. (R. 50). On August 16, 2022, Defendants filed their Reply. (R. 55).

## II.    STANDARD OF REVIEW

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56. That Rule provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  Under Rule 56, once the moving party has met its burden, the burden shifts

to the non-moving party to present specific facts showing there is a genuine issue of material fact.

*Arendale v. City of Memphis*, 519 F.3d 587, 593-94 (6th Cir. 2008) (quoting *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

When ruling on motions for summary judgment, courts accept the nonmovant's evidence

as true and draw all reasonable inferences in favor of the nonmovant.  *Loyd v. St. Joseph Mercy*

*Oakland*, 766 F.3d 580, 588 (6th Cir. 2014).  Summary judgment will not be granted if the

"evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, to survive summary judgment, the

nonmoving party cannot rely on "conjecture or conclusory accusations" but "must be able to show

sufficient probative evidence [that] would permit a finding in [his] favor on more than mere

speculation, conjecture, or fantasy."  *Arendale*, 519 F.3d at 605 (quoting *Lewis v. Philip Morris*

*Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).  Conclusory assertions that are supported only by the

asserter's own opinions cannot withstand a motion for summary judgment.  *Id.*

## III.    ANALYSIS

Shearer argues that Defendant Miller was deliberately indifferent to his serious medical

needs by failing to provide the appropriate recommended footwear for his ongoing diabetes-related

foot infections, and Defendant Kemen was deliberately indifferent to his serious medical needs by

failing to send him to the emergency room when he was evaluated by the EKCC medical

department on August 2, 2019.  Defendants argue that they are entitled to summary judgment

because Shearer did not fully exhaust his administrative remedies as required by the Prison

Litigation Reform Act, that Shearer's claim against Defendant Miller is barred by the applicable

statute of limitations for § 1983 claims, and there is no genuine issue of material fact that either Defendant acted with deliberate indifference to Shearer's serious medical needs.

### A.      The Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA") requires that before a plaintiff confined in any jail, prison, or other correctional facility can file an action relating to their conditions of confinement, the plaintiff must fully exhaust available administrative procedures. 42 U.S.C. § 1997e(a). This is an affirmative defense that must be plead and proven by the defendants. *Jones v. Bock*, 549 U.S. 199, 215 (2007). "A prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution." *Id.* at 217-19; *see also Woodford v. Ngo*, 548 U.S. 81, 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . .") (citations omitted). This requirement is intended to give prison officials notice and a fair opportunity to address a prisoner's claims on the merits before federal litigation is filed. *Mattox v. Edelman*, 851 F.3d 583, 592 (6th Cir. 2017).

In this case, Defendants have raised the affirmative defense that Shearer did not comply with the PLRA, because contrary to EKCC policy, Shearer failed to properly identify Defendants Miller and Kemen in his grievance forms. (R. 41 at Page ID 609-11). Shearer was required to exhaust the grievance procedures outlined in Kentucky Corrections Policy and Procedure ("CPP") 14.6 before he filed suit. (R. 41). With a medical complaint, an inmate must submit their grievances within five days from an incident and include enough information in the grievance to determine when the allegations occurred. (*Id.* at Page ID 713). Prison officials then offer an informal resolution to the grievance and have the inmate sign off as "satisfied" or "not satisfied" with that resolution. (*Id.* at Page ID 714). If the inmate is not satisfied, the inmate must request review by the Health Care Grievance Committee which can decide whether to concur with the

informal resolution. (*Id.*). If the inmate has still not received their desired result, they can appeal to the Health Care Administrative Review. (*Id.* at Page ID 715-16). After this step, the administrative remedy is considered fully exhausted. (*Id.*).

In addition to following this procedure, a grievance form must identity all individuals related to the grievance. (*Id.* at Page ID 713). The Sixth Circuit strictly enforces this requirement and considers it an inadequate exhaustion of administrative remedies when a prison requires the identification of all individuals that the prisoner is seeking relief from, and the prisoner does not identify those individuals on the initial form. *Mattox*, 851 F.3d at 591; *see also Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011) ("a plaintiff generally fails to exhaust administrative remedies by failing to include an officials name in a grievance if it is required by the applicable grievance procedures."). Defendants note that Defendant Miller was only named by Shearer on the initial form for Grievance No. 19-534 that was rejected, but not on the revised version. (R. 41 at Page ID 611, n.4). Defendants also argue that because Defendant Kemen was not named until Shearer appealed the revised Grievance No. 19-534 to Health Care Administrative Review, Shearer did not comply with the requirements to identify all individuals. (*Id.* at 611-12). Defendants cite to *Lee v. Wiley*, 789 F.3d 673, 680-81 (6th Cir. 2015), *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *3 (6th Cir. Apr. 23, 2019), and *Rutherford v. Lamneck*, No. 209-CV-914, 2012 WL 1598905, at *6 (S.D. Ohio May 7, 2012) in support of the proposition that naming a party in the later stages of a grievance is not enough to comply with prison procedures and provide fair notice of a lawsuit to Defendants. These cases are distinguishable from the present case for a few reasons.

The Sixth Circuit has excused the exhaustion requirement when it can be determined that the defendants have waived it. *Reed–Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) ("When prison officials decline to enforce their own procedural requirements and opt to consider

otherwise-defaulted claims on the merits, so as a general rule will we."). *Lee* recognized this principle, but the Circuit declined to extend it to the plaintiff because the plaintiff made only a brief note in the second stage of the grievance procedure about a conversation he had with the doctor later named as defendant. *Lee*, 789 F.3d at 680-81. Additionally, the Circuit found it persuasive that in the denial of the initial appeal, prison officials did not address that doctor at all, and the plaintiff failed to name the doctor again at the next stage of appeal. *Lee*, 789 F.3d at 680-81. The court held that for *Reed-Bey*'s holding to apply, the plaintiff needed to receive "merits-based responses" to his claims "at each step" of the grievance process. *Id.* (quoting *Cook v. Caruso*, 531 F. App'x 554, 562-63 (6th Cir. 2013)). *Brown* and *Rutherford* held the same, except in those cases, the plaintiffs identified different defendants in the first grievance. *See Brown*, 2019 WL 5436159 at *3 ("Brown listed two people at step 1 of the grievance . . . accordingly prison officials would naturally assume that Brown complied with the requirement to name those involved, and defendants cannot be said to have waived the exhaustion defense when they had no way of knowing that they would be the subject of a later lawsuit."); *see also Rutherford*, 2012 WL 1598905 at *6 ("[plaintiff's] grievance is directed only at Cheadle and makes no reference to the participation or even presence of any other officers."). Furthermore, in *Rutherford*, the additional defendants were not named at any stage of the grievance process, and received notice only when the plaintiff filed his complaint in federal court. *Rutherford*, 2012 WL 1598905 at *3-4. The court held that *Reed-Bey* would not apply because "the record contained no evidence that . . . officials considered the propriety of the conduct of Defendants." *Id.* at *6.

Here, with respect to Grievance No. 18-257 regarding Shearer's recommended specialized footwear, the grievance form was accepted and processed by EKCC even though Defendants Miller and Kemen were not identified. (R. 1 at Page ID 42). However, Shearer marked that he

9

was satisfied with the informal resolution, and he did not appeal further. (*Id.*). The Supreme Court is clear that a prisoner must exhaust his available remedies before he can file suit. *See Woodford*, 548 U.S. at 88. While Shearer does not have to appeal his grievances up to the highest level generally, he is required to do so before he can file a lawsuit. *Brooks v. Silva*, No. 13-6539, 2015 WL 12762112 (6th Cir. Apr. 6, 2015) (holding same). Because this grievance was not appealed further, Shearer did not fully exhaust his administrative remedies with respect to his complaint of not receiving his podiatrist-recommended footwear.

As for Grievance No. 19-534, EKCC initially rejected this Grievance for providing "too little information . . . to adequately investigate the problem." (R. 1 at Page ID 45). Shearer was instructed that he needed to explain when he last contacted the medical department about the issue, and list details about which employee he met with and how they addressed his foot problem. (*Id.*). Shearer was permitted to resubmit the form but did not include Defendant Miller in his new submission. (*Id.* at Page ID 52). The only individual Shearer named in his resubmitted grievance was NP Nolan, but she was not the subject of his complaint. (*Id.*). Rather, Shearer mentioned NP Nolan as evidence in support of his grievance with the medical department. (*Id.*) ("Nolan said I needed to go to E.R. But I was forced to wait for an upcoming appointment."). The informal resolution responded to Shearer's grievance on the merits, stating that "all provider orders have been followed. The [patient] has been to COPC for proper shoes per order of Podiatry. Also discussed noncompliance with diabetes medications and diet with the patient." (*Id.*). It cannot be said, as Defendants allege, that "prison authorities addressed the grievance with regard to the named individual" because NP Nolan was not mentioned in the response from EKCC. (*See* R. 41 at Page ID 612).

Shearer indicated that he was not satisfied with the informal resolution and filed for review with the Health Care Grievance Committee. (R. 1 at Page ID 52). Shearer added additional information to his complaint in this appeal, stating he "was told by NP Nolan that whoever she talked with upstairs denied me emergency or E.R. And he said that Kenneth Shearer had an appointment coming up, and that was 5 days later." (*Id.*). Instead of being instructed to re-file his original complaint to include this information, EKCC addressed it on the merits, concurring with the informal resolution and noting that Shearer had been instructed multiple times about "the importance of being compliant with [his diabetes] treatments." (*Id.* at 59). Shearer appealed, directly naming Defendant Kemen as the doctor that was consulted. (*Id.* at 60). The review took place, and again EKCC officials addressed his complaint on its merits, stating that there was no notation on his chart indicating that he needed to go the emergency room, and that he had been seen and treated by the outside provider according to their recommendations. (*Id.* at 59).

Notwithstanding Shearer's failure to identify Defendant Kemen in his initial grievance, officials at EKCC accepted the resubmitted grievance form and addressed it on the merits by allowing the grievance to be appealed up to the final stage, Health Care Administrative Review. (*Id.* at Page ID 60). Unlike the cases cited by Defendants, Shearer did not identify one defendant in his initial grievance and add new defendants at later stages. Defendants seem to argue that NP Nolan was named, and Defendant Kemen was later substituted, but Shearer's initial grievance does not allege any wrongdoing of NP Nolan, instead using her opinion that he needed to go to the emergency room as evidence of his alleged mistreatment. (*Id.* at Page ID 52). It would not be reasonable for prison officials to "naturally assume" that Shearer complied with the requirement to name those involved based on the inclusion of NP Nolan, especially when Shearer's initial grievance was already rejected for lack of information. *See Brown*, 2019 WL 5436159 at *3.

Therefore, EKCC waived Shearer's exhaustion requirement under the PLRA by fully evaluating Grievance 19-534 on its merits despite Shearer's failure to name the individuals responsible for his medical complaint at each step of the process.

However, a waiver argument can be forfeited when a plaintiff fails to raise it. *Cohron v. Cty. of Louisville, Ky.*, 530 F. App'x 534, 536 (6th Cir. 2013) ("Cohron failed to raise [a waiver] argument below and it is forfeited for that reason."). Shearer does appear to raise a waiver argument in his Response, stating "[w]hat is important and significant in this process is that the Grievance No. 19-534 was processed according to the Kentucky Department of Corrections CPP 14.6 and successfully made it to the final stage of administrative review." (R. 50 at Page ID 1095). As a *pro se* litigant, Shearer is entitled to "the benefit of a liberal construction of [the] pleadings and filings." *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). Though Shearer does not cite case law, he still makes the argument that despite Defendants' belief that his grievance was deficient, it was still evaluated on its merits. Therefore, the Court interprets this statement as an argument for waiver.

Thus, it appears that Shearer exhausted his administrative remedies under the PLRA with respect to Grievance No. 19-534 and Defendant Kemen because EKCC evaluated the grievance on its merits and Shearer raised an argument of waiver in his Response. Defendant Miller was not named in Shearer's revised Grievance No. 19-534 or at any other stage of the grievance procedures, and as noted above, as noted above, Shearer did not exhaust his administrative remedies for Grievance No. 18-257. Therefore, Shearer has not exhausted his grievance procedures under the PRLA with respect to his claim against Defendant Miller. For these reasons, Defendants' Motion for Summary Judgment will recommended to be granted on this ground for Defendant Miller, but not recommended on this ground as to Defendant Kemen. However, despite

overcoming the exhaustion requirement of the PLRA for Grievance No. 19-534, Shearer faces additional hurdles to his claims that will be evaluated below.

### B.    Applicable Statute of Limitations

Although Congress has not set a statute of limitations for § 1983 claims, 42 U.S.C. § 1988 mandates that federal courts must borrow state-law limitations periods that are most analogous to the § 1983 claim at issue. *Bonner v. Perry*, 564 F.3d 424, 430 (6th Cir. 2009) (quoting *Owens v. Okure*, 488 U.S. 235, 236 (1989)).  The general rule is that § 1983 actions are best characterized as personal injury actions, and Kentucky's statute of limitations for personal injury actions is one year. *Id.* at 431; *see* Ky. Rev. Stat. § 413.140(1)(a).

Defendants argue that because Shearer's action was filed on June 12, 2020 (R. 1), the applicable statute of limitations period began on June 12, 2019. (*See* R. 41 at Page ID 613).  Any allegations about inadequate treatment prior to this date are time-barred, and Shearer has conceded that the one year statute of limitations applies.  (*See* R. 50 at Page ID 1097) ("Plaintiff concedes to the law per same . . . There are no other allegations of suit for any other dates besides the events of August 2, 2019 . . . All previous and subsequent allegations are to support the claim of "Deliberate Indifference" in exposing the pattern of continued negligence. . . .").

Grievance No. 18-257 was submitted on May 23, 2018.  (R. 1 at Page ID 42).  This means that in addition to not exhausting his administrative remedies with respect to this grievance as required by the PLRA, Shearer's cause of action related to the orthopedic shoes falls outside the statute of limitations period.  Therefore, summary judgment is appropriate on this claim.  With respect to Grievance No. 19-534, Shearer filed it on August 20, 2019.  (R. 1 at Page ID 47).  This claim is within the statute of limitations period and is not procedurally barred.

### C.    Section 1983 Claims

Finally, Defendants argue that they are entitled to summary judgment because Shearer cannot show that either Defendant acted with deliberate indifference to Shearer's serious medical needs.[1]   (R. 41 at Page ID 613).   Because the Eighth Amendment prohibits cruel and unusual punishments, the Supreme Court has held that a state can "run afoul" of the Eighth Amendment by "failing to give prisoners the medical care that they need to prevent 'pain and suffering' from their health conditions."  U.S. Const. amend. VIII; *Phillips v. Tangilag*, 14 F.4th 524, 532 (6th Cir. 2021) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)).  To prove this type of claim under 42 U.S.C. § 1983, a plaintiff must show that each defendant acted under color of state law and that each defendant individually was deliberately indifferent to the prisoner's serious medical needs. *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

The parties here do not dispute that Defendants were acting under color of state law in their interactions with Shearer.  Though both defendants were not directly employed by EKCC, courts have held that parties contracting with a state to provide services to inmates can be considered state actors for purposes of a § 1983 suit.  *West*, 487 U.S. at 44; *Carl v. Muskegon County*, 763 F.3d 592, 596 (6th Cir. 2014).

The remaining question is whether Defendants were deliberately indifferent to Shearer's serious medical need.  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted).  While Defendants do not concede that Shearer's medical conditions constitute a serious

---

[1]    Defendants do not concede that Shearer had a serious medical need in their Motion, but do make arguments assuming that his medical conditions constitute a serious medical need.  (R. 41 at Page ID 614) ("Even assuming that Plaintiff's medical conditions at issue constitute a sufficiently serious medical need, there is no evidence that Plaintiff suffered a sufficiently serious *deprivation* of medical treatment.") (emphasis in original).

medical need, there is ample evidence in the record that he suffered from diabetes-related complications with his feet and toes that required ongoing treatment. Thus, Shearer had a serious medical need. Deliberate indifference to a prisoner's serious medical need, however, requires more than negligence in diagnosis or treatment of a medical condition. *Estelle*, 429 U.S. at 106 ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Deliberate indifference requires both objective and subjective components. *Phillips*, 14 F4th at 534.

In a health context, the objective component of deliberate indifference requires that the plaintiff establish they had a specific serious medical need and either did not receive care for that need or the treatment provided was "so cursory as to amount to no treatment at all." *Id.* (quoting *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 551 (6th Cir. 2009)). When the circumstance is a serious medical need where the plaintiff has received ongoing treatment and is challenging the adequacy of that treatment, the plaintiff must show that the care they received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (quoting *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005)). A desire for additional or different treatment does not usually support an Eighth Amendment claim, especially when a plaintiff fails to provide expert medical testimony (either through affidavits or depositions) that shows the medical necessity for such treatment. *Mitchell v. Hiniger*, 553 F. App'x 602, 605 (6th Cir. 2014); *Anthony v. Swanson*, 701 F. App'x 460, 463-64 (6th Cir. 2017). The Sixth Circuit has regularly rejected Eighth Amendment claims based on adequacy of treatment when the plaintiff has failed to present expert medical evidence that the treatment was inadequate. *Phillips*, 14 F.4th at 535; *Rhinehart*, 894 F.3d at 740; *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013); *Blosser v. Gilbert*, 422 F.

15

App'x 453, 461 (6th Cir. 2011). *See also Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) ("federal courts are generally reluctant to second guess medical judgments").

In addition to demonstrating that the medical need was objectively serious with expert medical evidence, the plaintiff must prove the subjective component for each defendant: that the defendants knew of the serious medical need and disregarded it. *Phillips*, 14 F.4th at 535. A plaintiff's disagreement with a course of treatment does not indicate that an official subjectively disregarded a serious medical need. *Id.* Instead, the plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." *Rhinehart*, 894 F.3d at 738 (quoting *Santiago*, 734 F.3d at 591). A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or harmful. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994) ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk."). Instead, a plaintiff "must produce evidence showing that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Perez v. Oakland Cnty.*, 466 F.3d 423, 424 (6th Cir. 2006) (quoting *Comstock v. McCrary*, 273 F.2d 693, 702 (6th Cir. 2001)). "[T]he subjective intentions of prison authorities must be demonstrated by *objective manifestations* of such intent, and cannot be proved by factually unsupported, conclusory opinions of the court or of the prisoners and their representatives." *Stevens v. Gooch*, 615 F. App'x 355, 360 (6th Cir. 2015) (quoting *United States v. Michigan*, 940 F.2d 143, 154 n.7 (6th Cir. 1991)) (emphasis added).

Defendants argue that summary judgment is appropriate on Shearer's claim for deliberate indifference because he received adequate care, he cannot point to expert evidence to support his assertions, and no reasonable jury could conclude that the objective or subjective component is

16

satisfied with respect to either Defendant. (R. 41 at Page ID 614). These arguments will be evaluated with respect to each Defendant.

### 1.    Defendant Ms. Jill Miller

As noted above, Shearer faces procedural hurdles to his claim against Defendant Miller associated with Grievance 18-257 with both the PLRA and the statute of limitations for his § 1983 claim. Setting those aside, Shearer still must show how Defendant Miller meets the objective standard of deliberate indifference to his serious medical need to be successful. As Shearer received ongoing treatment for his diabetes related complications for his feet and toes, he must show that his treatment was "so woefully inadequate as to amount to no treatment at all" to meet the objective component. *Mitchell*, 553 F. App'x 602, 604-05 (quoting *Alspaugh*, 643 F.3d at 169).

The provided medical records show multiple instances where the staff at EKCC provided Shearer with different types of orthotic shoes and permission to wear shower shoes during the noted time period. (R. 1 at Page ID 23, 24, 26). While it appears that there was some confusion about the type of shoes Shearer needed (*id.* at Page ID 18, 23), Shearer saw outside specialists regularly, was permitted to wear shower shoes at all times, and received drysol sprays to manage his hyperhidrosis. (R. 1 at Page ID 26). The medical records indicate that medical staff treated Shearer for his feet and diabetes related complications via regular appointments with his podiatrist, Dr. Clayton, and multiple visits to the medical department over the alleged time period. (*Id.* at 23-26). Shearer also received special permission to wear his shower shoes while the requests for specialized footwear were processing. (R. 1 at Page ID 15). While it may not have been Shearer's preferred course of treatment, the treatment was at least adequate for the purposes of an Eighth

Amendment claim, and certainly did not amount to "no treatment at all." *Mitchell*, 553 F. App'x at 604-05.

Additionally, Shearer has not provided any expert medical evidence that the delay in receiving his shoes or the treatment he received in the interim was inadequate or led to serious harm as required for an Eighth Amendment violation. The Sixth Circuit requires that an inmate "who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (citations omitted). Shearer argues that with respect to the medical footwear issue, "the evidence is in the medical records." (R. 50, Page ID 1102). Shearer believes that the medical records from the outside specialists that recommended that he be issued appropriate footwear demonstrate what an allegedly competent physician would have done in the same circumstances. (*Id.*). However, that is not the standard to prove inadequate treatment. While Shearer's medicals records do establish that he had an issue that required treatment, he needed to provide expert medical evidence establishing that the course of treatment he received was *inadequate* to be successful here. The Defendants point to *Rhinehart*, which noted that a prison doctor's failure to follow an outside specialist's recommendation does not necessarily establish inadequate care. *Rhinehart,* 894 F.3d at 742 (quoting *Santiago*, 734 F.3d at 591 ("even though an inmate showed that he had a serious skin condition and that his prison doctors failed to prescribe him the treatment that a specialist had recommended, he could not proceed past summary judgment . . . because he produced no 'medical proof' showing that the medications his prison doctors prescribed were inadequate.")). For these reasons, Shearer has failed to explain how Defendant Miller's actions regarding his treatment met the objective component of deliberate indifference, meaning the conduct was "so grossly

incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart*, 894 F.3d at 737.

Assuming arguendo that Shearer could show the objective component,[2] there is even less evidence in the record of the subjective component of deliberate indifference – that Defendant Miller was personally aware of the alleged risk of harm if Shearer did not receive the specialty shoes. Shearer does not point to any evidence that shows Defendant Miller was responsible for the delay in Shearer's specialty footwear. Instead, Defendants point to multiple instances where EKCC communicated with Shearer about ordering the specialty footwear and made accommodations for him both before the time period that Shearer alleges mistreatment and while the request at issue was pending. (*See* R. 41 at Page ID 602-04). Though Defendant Miller did serve as the Health Services Administrator at EKCC for the relevant time period, the Court has no information about what her job duties included or if she was the sole person in charge of ordering Shearer's orthopedic footwear. Even if the Court were able to ascertain from Shearer's Complaint that Defendant Miller was the sole person responsible for ordering his footwear, there is no evidence that she subjectively knew the risk of harm in delaying Shearer's footwear and chose to disregard it. Therefore, Shearer cannot demonstrate how Defendant Miller's conduct satisfies the subjective component of deliberate indifference.

Even when setting aside the procedural problems with Shearer's claim against Defendant Miller, and viewing the facts in a light most favorable to him, a reasonable jury could not conclude that Defendant Miller was deliberately indifferent to his claimed serious medical need. Shearer received constitutionally adequate care, he has not produced any expert medical evidence to

---

[2]   If a plaintiff cannot prove the objective element of deliberate indifference, the court does not need to engage in an analysis of whether a defendant's conduct meets the subjective component of deliberate indifference. *Phillips*, 14 F.4th at 535 ("Only if a prisoner proves this objective element must courts consider the second (subjective) part of the deliberate indifference test.").

support his assertions against Defendant Miller, and he cannot prove that Defendant Miller acted with deliberate indifference to his serious medical needs.  Thus, summary judgment is appropriate for Shearer's claim against Defendant Miller.

### 2.    Defendant Dr. Frederick Kemen

Shearer's claim against Defendant Kemen is that Defendant Kemen did not agree with NP Nolan that Shearer needed to go to the emergency room on August 2, 2019.  (R. 1 at Page ID 31). Shearer argues that if Defendant Kemen had sent him to the emergency room instead of taking a culture of his wounds and recommending a follow-up appointment a few days later, he "might still have all of his toes."  (R. 1 at Page ID 60).  Because Shearer received continuous treatment for his podiatry issues and contests the adequacy of that treatment, this claim is evaluated under the same standard as above.  Shearer must demonstrate with expert medical evidence how Defendant Kemen's course of treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Rhinehart*, 894 F.3d at 737.  Shearer has not met this burden.

When Shearer went to the EKCC medical department on August 2, 2019, he was complaining of "minimal pain" and swelling in his feet.  (R. 1 at Page 31).  NP Nolan asked Defendant Kemen for a consult on sending Shearer to the emergency room; Defendant Kemen advised to take a culture of the wound and move up Shearer's appointment with his outside podiatrist from September to the following week.  (*Id.*).  NP Nolan performed wound care, changed the dressing on Shearer's feet, and emphasized the importance of wound care.  (*Id.*).  Shearer does not explain how Defendant Kemen's directive to NP Nolan to take a culture of his foot and move up his appointment with a specialist was not adequate treatment for the symptoms he was experiencing.

20

Shearer argues in his response that NP Nolan's notation on his medical notes stating that she "[c]alled Dr. Kemen for consult on sending patient to the ER" is sufficient expert medical evidence for this claim. (R. 50 at Page ID 1101-02). Unfortunately, this notation is not enough to save Shearer's claim. The Federal Rules of Evidence allow an expert to be qualified through their "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. However, this Court has held that a nurse is not qualified to offer an expert opinion on the relevant standard of care for a doctor unless the nurse is a specialist in a relevant field, reads the relevant literature, and works closely with doctors to treat patients on a regular basis. *Hamilton v. Pike Cty., Ky.*, No. 7:11-cv-00099-ART-EBA, 2012 WL 6570508 at *3 (E.D. Ky. Dec. 17, 2012). It is possible that NP Nolan has more relevant expertise as a Nurse Practitioner compared to a Licensed Practical Nurse (LPN) or Registered Nurse (RN). NP Nolan could even specialize in podiatry. But Shearer has not provided in the record any of NP Nolan's qualifications or relevant experience that would demonstrate NP Nolan can serve as an expert on this particular issue.

Even if this Court could consider NP Nolan's notation as expert evidence, nothing about the notation indicates that the course of action Defendant Kemen directed was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart*, 894 F.3d at 737. The note itself indicates that NP Nolan was seeking a consult to send Shearer to the emergency room, for Defendant Kemen to make a final decision on how to proceed with Shearer's medical issue. (R. 1 at Page ID 31). The notes from Shearer's visit to the medical department do not indicate that sending Shearer to the emergency room was the only perceived course of action to deal with his medical issue. (*Id.*). Thus, Shearer cannot make a showing that Defendant Kemen's conduct satisfies the objective component of deliberate indifference, meaning the conduct was "so grossly incompetent, inadequate, or

excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart*, 894 F.3d at 737.

With respect to the subjective component, the result is the same. Defendants point to *Broyles v. Correctional Medical Services, Inc.*, where the Sixth Circuit affirmed a lower court's decision to dismiss a prisoner's complaint for inadequate medical treatment. 478 F. App'x 971, 976 (6th Cir. 2012). In that case, the inmate requested medical attention for a partial blur in his right eye and was seen for the issue four days later. *Id.* at 973. The nurse did not notice anything abnormal, scheduled him to see optometry, and told the inmate to let them know if the condition worsened. *Id.* A few days passed, and the inmate was notified that he was placed on the waiting list for the eye clinic for "non-emergent symptoms." *Id.* About three weeks from his initial complaint, the inmate was seen by the clinic optometrist and diagnosed with a retinal detachment, later to be determined serious by an outside specialist. *Id.* The specialist stated, and two other specialists later confirmed, that because of the delay in his treatment, it was unlikely that the inmate's vision could be repaired. *Id.* Despite that information, the court declined to find that the nurse satisfied the subjective component of deliberate indifference by classifying the inmate's condition as non-emergent. *Id.* at 976 (quoting *Estelle*, 429 U.S. at 97) ("An allegation of mere negligence in diagnosis or treatment is not actionable under § 1983.").

Like *Broyles*, Defendant Kemen decided to classify Shearer's foot issue as non-emergent and move up his specialist appointment instead. In addition to a lack of medical evidence that would indicate the delay in treatment was the sole cause of the loss of Shearer's toes, Shearer offers no evidence that Defendant Kemen recognized that risk during Shearer's August 2, 2019 appointment and chose to disregard it. Therefore, he cannot show that Defendant Kemen's actions met the subjective component of deliberate indifference.

22

Perhaps most fatal to Shearer's claim is his own admission that he was presented with the option to forego surgery and chose to proceed with the amputation voluntarily. (R. 1 at Page ID 36). The records Shearer submitted with his Complaint note that during his evaluation the day before amputation, "[p]atient elected to proceed with admission and amputation of these digits. Given the *option of conservative versus surgical options*. [Shearer] *elected* to proceed with amputation." (*Id.*) (emphasis added). If Shearer had an option of whether to have his toes amputated, then Defendant Kemen's decision against sending Shearer to the emergency room the week before cannot be the sole reason he lost his toes.

Even when viewing the facts in a light most favorable to Shearer, a reasonable jury could not conclude that Defendant Kemen was deliberately indifferent to his serious medical needs. Shearer received constitutionally adequate care for his feet on August 2, 2019, and he has not produced any expert medical evidence to support his assertions that Defendant Kemen's decision not to send him to the emergency room constituted deliberate indifference to his serious medical needs. Thus, summary judgment is appropriate for this claim as well.

## IV. CONCLUSION AND RECOMMENDATIONS

For the reasons discussed above, it is hereby **RECOMMENDED** that Defendants' Motion for Summary Judgment (R. 41) be **granted**. Specific objections to this Report and Recommendation must be filed within fourteen (14) days of service or further appeal is waived. 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 155 (1985). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

Signed this 13th day of February, 2023.



**Signed By:**

**_Candace J. Smith_**

**United States Magistrate Judge**

J:\DATA\Orders\civil ashland\2020\20-66-GFVT-CJS R&R re MSJ.docx